# EXHIBIT R

# EXHIBIT R

**From:** RSHUSTERMAN@aol.com
**Sent:** Wednesday, February 03, 2010 11:33 PM
**To:** Thomas Baumlin
**Subject:** Portfolio III

Tom:

As a follow up to my earlier email today, IPI is prepared to submit the following repurchase offer on portfolio III. The original two transactions were recorded September 12, 2008 and September 19, 2008 for the combined amount of $3,890.000. This represented a combined face value of $87,415,730.33. It appears we can submit a repurchase price for this file in the amount of $6,200,660 payable over six installments starting April 15, 2010. The agreement would also need a clause allowing the acceleration of payments without any penalty. Meaning at any time the six payments can be prepaid in full.

Please advise if you want me to move forward. Thank you for your patience.

Kind regards,
Richard

# EXHIBIT  S

# EXHIBIT  S

| From: | Zee, Jo Ann [JZee@duanemorris.com] on behalf of Weiner, William L. [WLWeiner@duanemorris.com] |
|---|---|
| Sent: | Tuesday, February 23, 2010 4:06 PM |
| To: | 'bpbourque@roundstoneadvisors.com' |
| Cc: | 'tbaumlin@roundstonehealthcare.com'; Weiner, William L. |
| Subject: | FW: IPI/Roundstone |

| Attachments: | IPIRoundstone Healthcare Partners III .pdf |



IPIRoundstone
Healthcare Partn...

Mr. Bourque:

Bill Weiner requested I send you the attached fully executed agreement between IPI and Roundstone Healthcare Partners III.

Thank you,
JoAnn
For Bill Weiner

-----Original Message-----
From: Princeton_OperationsMP6000@duanemorris.com [mailto:Princeton_OperationsMP6000 @duanemorris.com]
Sent: Tuesday, February 23, 2010 1:38 PM
To: Zee, Jo Ann
Subject: IPI/Roundstone

This E-mail was sent from "RNPF3F0BF" (Aficio MP 6001).

Scan Date: 02.23.2010 13:37:35 (-0500)
Queries to: Princeton_OperationsMP6000@duanemorris.com


For more information about Duane Morris, please visit http://www.DuaneMorris.com


Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

## REPURCHASE AGREEMENT

THIS REPURCHASE AGREEMENT (this "Agreement") made and entered into by and between ROUNDSTONE HEALTHCARE PARTNERS III, L.P., a Delaware limited partnership (hereinafter referred to as "Roundstone" or "Seller") whose address is 20 Bingham Avenue, 2nd Floor, Rumson, NJ 07760, and INTERNATIONAL PORTFOLIO, INC., a Delaware corporation (hereinafter referred to as "IPI" or "Buyer"), maintaining a business address at 200 Barr Harbor Drive, Suite 400, West Conshohocken, PA 19428.   Roundstone and IPI are hereinafter sometimes individually referred to as a "Party," and are hereinafter sometimes collectively referred to as the "Parties".

### BACKGROUND

A.    IPI previously sold to Roundstone two (2) certain medical debt portfolios (the "Two Portfolios") in connection with two (2) separate transactions, one of which was the subject of a written agreement between the Parties dated September 12, 2008 (the "9/12/08 Agreement"), and the other that was subject of a written agreement between the Parties dated September 19, 2008 (the "9/19/08 Agreement").

B.    Pursuant to the 9/12/08 Agreement and the 9/18/08 Agreement (hereinafter collectively referred to as the "Original Sale Agreements"), IPI sold the Two Portfolios to Roundstone, and for which Roundstone paid IPI the aggregate sum of Three Million Eight Hundred Ninety Thousand Dollars and Zero Cents ($3,890,000.00),

C.    At the time IPI sold the Two Portfolios to Roundstone pursuant to the Original Sale Agreements, such Two Portfolios consisted of uncollected and charged-off accounts (the "Accounts"), having an aggregate unpaid balance (the "Original Balance") of Eighty-Seven

Million Four Hundred Fifteen Thousand Seven Hundred Thirty Dollars and Thirty-Three Cents ($87,415,730.33).

D.  Roundstone now desires to sell back the Two Portfolios to IPI, and IPI wishes to repurchase such Two Portfolios on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the promises, respective covenants and agreements hereinafter contained, it is hereby covenanted and agreed by and between the Parties as follows:

1.  (a)  Subject to the terms and conditions of this Agreement, including Schedules 1(a) and 1(b) attached hereto and made a part hereof, Roundstone sells, assigns and transfers to IPI all of Roundstone's right, title and interest in and to the Accounts.

(b)  In consideration of the sale to IPI by Roundstone of the Accounts pursuant to this Agreement and Schedules 1(a) and 1(b) hereof, IPI shall pay to Roundstone the aggregate sum of Six Million Two Hundred Thousand Six Hundred Sixty Dollars and Zero Cents ($6,200,660.00); and which sum shall constitute the purchase price as referenced by Schedule 1(b) hereto (the "Purchase Price").  Subject to the terms of Section 3 of this Agreement, the Purchase Price shall be payable to Roundstone by IPI in six (6) equal, consecutive monthly installments (each such installment hereinafter referred to as an "Installment"), with the first such Installment, in the amount of $1,033,443.30, payable on April 15, 2010, and each of the five (5) subsequent Installments payable on the fifteenth (15th) of each subsequent month, unless such fifteenth (15th) day is not a business day, in which case such Installment shall be payable on the next succeeding day that is a business day.

2.  Roundstone shall not be required to reimburse IPI the amount of any funds previously paid to Roundstone by IPI in accordance with paragraph 3 of the Original Sale

DM2\2214339.1

Agreements; and which funds may have resulted from collection efforts undertaken by IPI on behalf of Roundstone in connection with the Original Balance of the Accounts pursuant to such Original Sale Agreements.

3.     IPI shall have the right, at its sole option and upon notice to Seller, to extend for a period up to 120 days (the "120-Day Extension Period") the date on which the any Installment is due as referenced by Section 1(b) of this Agreement. Prior to the end of the 120-Day Extension Period, and upon further notice to Seller, IPI may elect not to proceed with the payment of any such Installment, in which case neither Party shall have any further obligation or liability to the other with respect to such Installment including, but not limited to, any liability for liquidated damages of any kind whatsoever. However, IPI's decision to extend or cancel, as the case may be, the payment of any Installment shall not affect the payment of any subsequent Installment that might be due as referenced by Section 1(b) of this Agreement, subject to the provisions of this Section 3. Further, IPI shall, at any time, have right, at its sole option, to prepay in whole or in part, without penalty or notice to Seller, any Installment(s) that might be due under this Agreement.

4.     This Agreement constitutes the entire agreement of the Parties relating to the subject matter hereof. All prior negotiations and understandings are merged into this Agreement; and no change, modification or amendment of this Agreement shall be made by the Parties, except in writing signed by the Parties.

5.     Roundstone shall indemnify, defend and hold IPI, its officers, directors, managers, employees, stockholders, agents and attorneys harmless from any and all claims, losses, costs, expenses, deficiencies, liabilities, obligations or damages (including related counsel fees) resulting from Roundstone's acts or omissions for which IPI may be held liable.

DM2\2214339.1

6.    IPI shall indemnify, defend and hold Roundstone and all its employees, agents and attorneys harmless from any and all claims, losses, costs, expenses, deficiencies, liabilities, obligations or damages (including related counsel fees) resulting from IPI'S acts or omissions for which Roundstone may be held liable.

7.    Nothing in this Agreement is intended to or shall be construed to constitute or establish an agency, joint venture, partnership or fiduciary relationship between the Parties and no Party shall have the right or authority to act for or on behalf of the other with respect to any matter.

8.    Any notice, demand, claim or communication under this Agreement (hereinafter referred to as a "Notice") shall be in writing, and shall be deemed to have been given upon receipt thereof if delivered personally or sent by certified mail, return receipt requested, postage prepaid, or sent by prepaid overnight courier, to the Parties at their respective addresses set forth on the first page of this Agreement (or at such other addresses as shall be specified by the Parties by like Notice).

9.    This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws principles.

10.    This Agreement shall inure to the benefit of and be binding on the Parties, and their respective successors, assigns, heirs, executors, administrators and legal representatives.

11.    This Agreement may be executed in several counterparts and all executed counterparts shall constitute one and the same instrument, binding on all Parties, even though all Parties were not signatories to the original or the same counterpart. A facsimile or emailed .pdf file signature page shall be deemed an original and shall be binding.

02/23/2010 10:37 FAX 6096312401        DUANE MORRIS LLP                    @002/002

2010-02-22 19:28              >>        15092285930                              P3/3

IN WITNESS WHEREOF, the Parties, intending to be legally bound hereby, have

executed this Agreement by their respective, duly-authorized representatives on the date(s)

appearing next to their respective signatures below.

INTERNATIONAL PORTFOLIO, INC.

By: _____

Dated: _2/23/10_

Richard Shusterman, President/CEO

ROUNDSTONE HEALTHCARE
PARTNERS III, L.P.

By its General Partner,
Roundstone Healthcare Partners, LLC

By: _____

Dated: _FEB 22 2010_

Basil Bourque, Managing Member

5

DM3\2114319.1

2010-02-22 19:28          >>   16092285930                                         P 2/3

## SCHEDULE 1(a)
## BILL OF SALE AND ASSIGNMENT OF ACCOUNTS

Roundstone Healthcare Partners III, L.P., a Delaware limited partnership ("Assignor"), hereby absolutely sells, transfers, assigns, sets over and conveys to International Portfolio, Inc. ("Assignee"), without recourse and without representations or warranties except those as outlined in the Repurchase Agreement (as defined below), express or implied, of any type, kind or nature:

    (a)    all of Assignor's right, title, and interest in and to each of the accounts (the "Accounts") identified in the Account Schedule attached as Exhibit "A" (the "Account Schedule") to the Original Sale Agreements (as defined in the Repurchase Agreement), together with other evidence of indebtedness, if any; and which Account Schedule is hereby incorporated herein by reference; and

    (b)    all principal, interest or other proceeds of any kind with respect to the Accounts, but excluding any payments or other consideration received by or on behalf of Assignor prior to the Cutoff Date (as defined in the Original Sale Agreements) with respect to the Accounts.

This Bill of Sale is being executed and delivered pursuant to and in accordance with the terms and provisions of that certain Repurchase Agreement made and entered into by and between Assignor and Assignee dated February 22, 2010 (the "Repurchase Agreement"). The Accounts are defined and described in the Repurchase Agreement and are being conveyed hereby subject to the terms, conditions and provisions set forth in such Repurchase Agreement.

This Bill of Sale shall be governed by the laws of the Commonwealth of Pennsylvania without regard to the conflict-of-laws rules thereof.

DATED:    February 22, 2010

SELLER:    ROUNDSTONE HEALTHCARE PARTNERS III, L.P.

By its General Partner,
Roundstone Healthcare Partners, LLC

By:
Name:    Basil Bourque
Title:    Managing Member

DM2\2214339.1

## SCHEDULE 1(b)
## ACCOUNT SCHEDULE

| # OF ACCOUNTS (IF KNOWN) | ORIGINAL BALANCE OF ACCOUNTS (FACE VALUE) | | PURCHASE PRICE PERCENTAGE | | PURCHASE PRICE |
|---|---|---|---|---|---|
| | $87,415.730.33 | x | 7.10% | = | $6,200,660.00 |
| | | x | | = | |
| | | x | | = | |
| | | x | | = | |
| | | x | | = | |
| | | x | | = | |
| | | x | | = | |

# EXHIBIT  T

# EXHIBIT  T

From: RSHUSTERMAN@aol.com [mailto:RSHUSTERMAN@aol.com]
Sent: Tuesday, May 18, 2010 8:28 AM
To: seanmcn@verizon.net
Cc: WLWeiner@duanemorris.com
Subject: Re: FW: Fund III Follow-Up

Sean/Bill:


Lets discuss. Please call me to set up a call


In a message dated 5/18/2010 6:23:06 A.M. Eastern Daylight Time, seanmcn@verizon.net writes:

Richard,


I am confused by this email from Bill Weiner. When the collection firm that purchased our Fund III portfolio missed their April 15th payment date, you told me that they were finishing up existing inventory and that you were "highly confident" that funding would happen in "2 to 4 weeks". We have just started the 5th week.


Bill's email is very disturbing as it appears that Fund III has not been sold to a collection firm (as we have reported to our investors) but is now subject to "the process of closing several large transactions" by IPI.


What am I missing? Please call me this morning as we have an obligation to report any material changes to our investors.


Thanks,


Sean


From: Weiner, William L. [mailto:WLWeiner@duanemorris.com]
Sent: Tuesday, May 18, 2010 12:22 AM
To: Sean McNamara
Subject: Fund III Follow-Up


Hi Sean—

I understand you spoke with Richard last evening re: Fund III.  At this point, IPI is in the process of closing several large transactions, with such closings, including the related funding, scheduled to occur over the next few weeks.  At that point, IPI expects to proceed with the repurchase transaction in connection with Fund III.

Any questions in the meantime, please let me know.

Thank you and regards,

*Bill*

William L. Weiner

Partner

Duane Morris LLP

PO Box 5203

Princeton, NJ 08543-5203

p: 609.631.2421 (direct)

f:  609.228.5930

cell: 215.421.3700

wlweiner@duanemorris.com

www.duanemorris.com

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

--
Sean McNamara

(p) 908 630 9266
(e) sfmcnamara@gmail.com

# EXHIBIT  U

# EXHIBIT  U

From:        Hugh B. Shafritz, Esq. [hshafritz@collectionslawfirm.com]
Sent:        Tuesday, October 12, 2010 4:54 PM
To:         Thomas Baumlin
Subject:    RE: Duplicates

Dear Tom:

At there request, after my e-mail, we are setting up a conference call with IPI tomorrow morning.  I will contact you after the call.  If IPI agrees, the easiest way to identify the problem files is for us to get the Greenfish files loaded.  We would then need to get a limited amount of information from all of the fund owners for all the accounts they think they own.  All we need is the account number, date of service, balance, date of assignment, and fund code.  We can then write a program to compare all of the accounts in the system and produce a list of accounts which show multiple owners.  In addition we can identify any accounts that you think you own that have not been loaded into the system.  We will forward the list to the investors and IPI and the rest will be up to IPI and the investors to figure out, we are going to place a hold on the accounts that show any possibility of being sold twice.

Hugh Shafritz, Esquire
Shafritz and Braten, P.A.
25 Seabreeze Avenue
Suite 400
Delray Beach, Florida 33483
Phone: (561) 278-7828
Fax : (561) 278-8658

The information contained in this electronic message from Shafritz and Braten, P.A.. and any attachments to this message are intended for the exclusive use of the addressee (s) and may contain confidential or privileged information belonging to the sender which is protected by the attorney-client privilege.

**From:** Thomas Baumlin [mailto:tbaumlin@tworiverscapital.net]
**Sent:** Tuesday, October 12, 2010 4:46 PM
**To:** Hugh B. Shafritz, Esq.; Rick Bates
**Cc:** khill@rshcp.com; Sean McNamara; bpbourque@comcast.net
**Subject:** Duplicates

Hugh- we are trying to understand how many duplicates there could be out there with the files you have now.   We think you have a statistically valid sample.   We are pretty concerned.   Can't you just run an analysis with what you have to start?   I think we can help get the other pieces, but we are anxious to get a reading from what you have now.

Thomas Baumlin
Two Rivers Capital
20 Bingham Avenue, 2nd floor
Rumson, NJ  07760
p- 732 383-5480
m- 732 693-5470
tbaumlin@tworiverscapital.net

# EXHIBIT V

# EXHIBIT V

| | |
|---|---|
| **From:** | rshusterman@aol.com |
| **Sent:** | Wednesday, September 08, 2010 12:25 PM |
| **To:** | Thomas Baumlin; Lmmvars@aol.com |
| **Cc:** | gperkiss@perkiss.com; khill@rshcp.com; sfmcnamara@gmail.com; bpbourque@comcast.net |
| **Subject:** | Re: Legal fees |

Tom:

I have replied to each point below:

---- Original Message ----
From: Thomas Baumlin <tbaumlin@tworiverscapital.net>
To: rshusterman@aol.com <rshusterman@aol.com>; Lmmvars@aol.com <Lmmvars@aol.com>
Cc: gperkiss@perkiss.com <gperkiss@perkiss.com>; khill@rshcp.com <khill@rshcp.com>; sfmcnamara@gmail.com
<sfmcnamara@gmail.com>; bpbourque@comcast.net <bpbourque@comcast.net>
Sent: Wed, Sep 8, 2010 11:10 am
Subject: RE: Legal fees

Richard- I sent the backup for the 68,200 this morning.   Please note that the fund you are
billing us for is closed.   We can't commingle funds.

RS REPLY: I understand a fund is closed but if we have hard dollar costs that IPI already paid,
we need to get reimbursed for the costs. I will speak with Sean about a method to handle this.
We are also checking the legal files you paid already against the files still owed to IPI.

Michael Zoldan told me that he was billing IPI 40,000 per month, and that it had been reduced
to 20,000 per month.
RS REPLY: in fact your figures are in correct. i have documented proof of every single payment
made to dsp. The fees paid for your files to DSP or any other files IPI had paid to DSP are based
on a flat out percentage fee. If you can send me a spread sheet detailing every file you had, the
date of purchase, length the file was or is open and the face value, we will have DSP provide an
invoice which will show in fact the fees were paid by IPI. There is no no magic here, just a flat
fee paid based on face value using a fixed percentage rate.

On 5.2 billion of paper, this does not come to a rate of .0007.   This is what he told me in his
office.   We can't pay for funds that were never opened.

EACH fund will need a separate invoice for DSP and we will need to disburse the cash from each
separate fund.

RS REPLY: Please send the spread sheet and we will have the individual invoices prepared by
DSP and deducted against the direct payments owed. If a balance is still owed to your firm, it
will be paid immediately.

Thanks,
Richard

When will the cash from the DP's be sent to the respective accounts?

---

**From:** rshusterman@aol.com [mailto:rshusterman@aol.com]
**Sent:** Wednesday, September 08, 2010 10:57 AM
**To:** Thomas Baumlin; Lmmvars@aol.com
**Cc:** gperkiss@perkiss.com; khill@rshcp.com; sfmcnamara@gmail.com; bpbourque@comcast.net
**Subject:** Re: Legal fees

Tom:

On the legal fee front, please send us the back up support associated with the accounts covered by your wire your firm sent us so we can match the files and also determine which legal fees are still owed.

On the dsp front, IPI paid DSP a flat percentage rate based on your face value. We have proof of every monthly payment ever made to DSP. The simple way to look at the DSP fees would be to list a spread sheet of every file you have owned, inclusive of the date the fund started, ended and the face value for each fund code. The percentage paid to DSP for your files were the same percentage rate. Michael will confirm IPI paid every dollar to DSP we are owed.

Thanks,
Richard

---- Original Message ----
**From:** Thomas Baumlin <tbaumlin@tworiverscapital.net>
**To:** rshusterman@aol.com <rshusterman@aol.com>; Lmmvars@aol.com <Lmmvars@aol.com>
**Cc:** Gary Perkiss <gperkiss@perkiss.com>; khill@rshcp.com <khill@rshcp.com>; Sean McNamara <sfmcnamara@gmail.com>; Basil P. Bourque <bpbourque@comcast.net>
**Sent:** Wed, Sep 8, 2010 9:49 am
**Subject:** RE: Legal fees

In any case, we still have the issues associated with the offsets between different funds.  As noted in previous emails, we can't offset one fund's expenses with the other funds.- Richard, Basil will be sending over the information.

Can we see the same information on DSP?  I had a direct conversation with Mike Zoldan about his billing and it doesn't match the information that was sent over, not to mention the fact that the invoice sent along the other day was for timing for funds when they weren't even open (i.e. funds were not open for 24 months, yet the bill was for 24 months, so there had to be something wrong).

We will need to settle up all bills on a fund by fund basis, as had been standard practice.

Thanks!

Tom

---

**From:** rshusterman@aol.com [mailto:rshusterman@aol.com]
**Sent:** Wednesday, September 08, 2010 9:40 AM
**To:** Thomas Baumlin; Lmmvars@aol.com
**Cc:** Gary Perkiss; khill@rshcp.com; Sean McNamara; Basil P. Bourque
**Subject:** Re: Legal fees

Please supply the. Date of tje wire and th account number wired into.

2

Thanks

Richard
Sent from my Verizon Wireless BlackBerry

---

**From:** Thomas Baumlin <tbaumlin@tworiverscapital.net>
**Date:** Wed, 8 Sep 2010 03:55:41 -0700
**To:** Lmmvars@aol.com<Lmmvars@aol.com>
**Cc:** gperkiss@perkiss.com<gperkiss@perkiss.com>; rshusterman@aol.com<rshusterman@aol.com>;
khill@rshcp.com<khill@rshcp.com>; Sean McNamara<sfmcnamara@gmail.com>; Basil P.
Bourque<bpbourque@comcast.net>
**Subject:** RE: Legal fees

Lina and Richard- of these fees, $68,200 were paid by wire transfer in 2008 and Basil has the
backup in his office.   I am still investigating the bottom part of this spreadsheet.

Can you re-check on your side?

---

**From:** Lmmvars@aol.com [mailto:Lmmvars@aol.com]
**Sent:** Tuesday, September 07, 2010 3:30 PM
**To:** Thomas Baumlin
**Cc:** gperkiss@perkiss.com; rshusterman@aol.com
**Subject:** Legal fees

Tom,

Attached is a spreadsheet of accounts that were paid by IPI back in 2008 and 2009 prior to fees being netted from remits.

I am awaiting one more file which I should have tomorrow.

If you have any questions, let me know.

*Lina Monterosso*
International Portfolio, Inc.
V.P. of Operations
Cell: 717-587-9007
Fax: 954-747-0633
Toll free: 1-888-477-0474