## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREENFISH, II. L.P., et al.,          :   CIVIL ACTION
                  **Plaintiffs**
    **vs.**                          :   NO. 2:11-cv-07628 (MSG)

INTERNATIONAL PORTFOLIO,          :
INC.; *et al.*
         **Defendants**                :

## ORDER

      **AND NOW**, this _____ day of _____, 2012, upon

consideration of the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12

(b) (6) and 12 (b) (3) for improper venue, and any and all responses thereto, it is hereby

**ORDERED** and **DECREED** that said Motion is **GRANTED.**  Plaintiffs' claims are

hereby **DISMISSED WITHOUT PREJUDICE.**  Plaintiffs' may re-file their claims, if

they choose, in the Court of Common Please for Montgomery County, Pennsylvania.

                BY THE COURT:

                _____
                **Goldberg, J.**

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREENFISH, II. L.P., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | | |
| **vs.** | : | **NO. 2:11-cv-07628 (MSG)** |
| | | |
| **INTERNATIONAL PORTFOLIO,** | : | |
| **INC.;** *et al.* | | |
| **Defendants** | : | |

## MOTION TO DISMISS PURSUANT TO RULES 12 (b) (6) AND 12 (b) (3) FOR IMPROPER VENUE, BASED UPON AN EXCLUSIVE CONTRACTUAL FORUM SELECTION CLAUSE REQURING SUIT TO BE BROUGHT, IF AT ALL, IN MONTGOMERY COUNTY, PENNSYLVANIA, OF DEFENDANT <u>INTERNATIONAL PORTFOLIO, INC.</u>

Defendant, International Portfolio, Inc. ("IPI"), through its attorneys Spector Gadon & Rosen, P.C., respectfully submits the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12 (b) (6) and 12 (b) (3) for improper venue in the United States District Court sitting in Philadelphia County, based upon exclusive contractual forum selection clauses requiring suit to be brought, if at all, in the Court of Common Pleas in Montgomery County, Pennsylvania. IPI's Motion is predicated upon the reasons set forth in the attached Memorandum of Law, which is incorporated by reference herein.

Respectfully Submitted,

**SPECTOR GADON & ROSEN, P.C.**

By:     /s/ Paul R. Rosen, Esq./Andrew J. DeFalco, Esq.
Paul R. Rosen, Esquire
Andrew J. DeFalco, Esquire
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania  19103
(215) 241-8888 (Main)
(215) 241-8844 (Fax)
Counsel for Defendant
International Portfolio, Inc.

Date:  January 3, 2012

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREENFISH, II. L.P., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | | |
| **vs.** | : | **NO. 2:11-cv-07628 (MSG)** |
| | | |
| **INTERNATIONAL PORTFOLIO,** | : | |
| **INC.;** *et al.* | | |
| **Defendants** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULES 12 (b) (6) AND 12 (b) (3) FOR IMPROPER VENUE,
BASED UPON AN EXCLUSIVE CONTRACTUAL FORUM SELECTION
CLAUSE REQURING SUIT TO BE BROUGHT, IF AT ALL, IN
MONTGOMERY COUNTY, PENNSYLVANIA, OF DEFENDANT
<u>INTERNATIONAL PORTFOLIO, INC.</u>**

Defendant, International Portfolio, Inc. ("IPI"), through its attorneys Spector

Gadon & Rosen, P.C., respectfully submits the following Memorandum of Law in

support of its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12 (b) (6)

and 12 (b) (3) for improper venue in the United States District Court sitting in

Philadelphia County, based upon exclusive contractual forum selection clauses requiring

suit to be brought, if at all, in the Court of Common Pleas in Montgomery County,

Pennsylvania.  Because this is a discrete threshold issue of law, IPI files this motion

without prejudice to its right to join in later-filed motions to dismiss on other substantive

issues of law.

I.      <u>INTRODUCTION</u>

Dissatisfied with its contractual rights controlled under numerous integrated 2009

Repurchase Agreements that it entered into with IPI, where IPI is at the center of each

and every claim in the Complaint and is the enterprise through which all of the wrongful

conduct is alleged to have flowed, and which Repurchase Agreements contain a forum

selection clause requiring that suit be brought, if at all, in the venue of Montgomery

County, Pennsylvania, Plaintiff Greenfish II, L.P. ("Greenfish"), joined together with co-

Plaintiff Roundstone Healthcare Partners, III, L.P. ("Roundstone") to attempt to avoid its

contractual obligations through an elaborate theory of fraudulent conduct resulting in

violations of the federal RICO statute, 18 U.S.C. § 1961 *et seq.*, and common law fraud,

to attempt to circumvent the Repurchase Agreements, and to recover damages over and

above the liquidated damages provision and other controlling provisions contained in the

Repurchase Agreements. This Plaintiffs cannot do. As set forth below, it is clear from

the pleadings that the relationship of all parties is contractual. This Court should dismiss

all of the claims in this case against all of the Defendants for the foregoing reasons:

> 1. The forum selection clauses in the Greenfish Repurchase Agreements are "mandatory" and require all claims covered thereunder to be brought in state court in Montgomery County, Pennsylvania;

> 2. The forum selection clauses in the Greenfish Repurchase Agreements apply to all of the claims in this case, including breach of contract, RICO, tort, and others;

> 3. The forum selection clauses in the Greenfish Repurchase Agreements apply to all of the Defendant-agents of the signatory, IPI, involved in the transactions at issue in the Complaint, including the two alleged agents and principals of IPI, Richard Shusterman ("Shusterman") and Robert Feldman ("Feldman"), three attorneys (and their law firms) who represented IPI, William Weiner, Esquire ("Weiner"), Peter Tucci, Esquire ("Tucci"), and Gary Perkiss, Esquire ("Perkiss"), Weiner's law firm, Duane Morris ("Duane"), and Tucci's law firm, Fox Rothschild ("Fox"); as well as Defendants Michael Zoldan ("Zoldan") and DSP Holdings, Inc. ("DSP"), which are alleged to be agents of IPI and provided appraisals of the IPI portfolios to the Plaintiffs;

> 4. The forum selection clauses in the Greenfish Repurchase Agreements apply to Roundstone, as

Roundstone has brought joined in Greenfish's suit as a co-Plaintiff with Greenfish for, *inter alia*, a joint cause under their sole claim for breach of contract (Count III), as well as RICO and other common law claims, based upon the same course of alleged wrongful conduct against IPI and its alleged agents carried out through IPI; thus, its claims are inextricably intertwined and integrally related to those of Greenfish;

5.    Even if the forum selection clauses in the Greenfish Repurchase Agreements do not cover Roundstone (they unquestionably cover Greenfish), Plaintiffs cannot avoid the forum selection clause by joining a co-Plaintiff with much less involvement. Thus, the Court dismiss or stay the claims of Roundstone based upon *forum non conveniens*, to prevent Defendants from having to simultaneously litigate two complicated RICO lawsuits arising from the same claims in different fora with potentially different results, which can create complex issues of *res judicata* and collateral estoppel; and

6.    There are no other considerations to prejudice Plaintiffs from bringing the same claims in state court in Montgomery County, and no issues to preclude this Court from dismissing the Plaintiffs' claims without prejudice for them to bring the claims in state court in Montgomery County, Pennsylvania, should they chose to do so.

## II.    FACTS

Greenfish and Roundstone are investment funds that purchased portfolios containing medical debts such as unpaid insurance claims ("Debt"). [See Plaintiffs' Complaint ("Cpl."), ¶ 34] Through the contracts that they entered into with IPI, the Plaintiffs have stated expressly that they are sophisticated investment professionals who perform their own independent evaluation of each and every investment. [See, e.g., Cpl., Ex. "M," Sec. 5.7] Plaintiffs allege that IPI was (and is) a purchaser and seller of Debt. Plaintiffs allege that Shusterman was the President of IPI [Cpl, ¶ 14], and that Feldman was a principal of IPI. [Cpl, ¶ 15] Plaintiffs allege that Weiner, Duane, Tucci and Fox

3

were at all times material acting as legal counsel to IPI [Cpl, ¶ 20-22], and that Zoldan and DSP were "employed by and participated in the operations and management of IPI under the direction and control of Shusterman and Feldman." [Cpl., ¶ 122]

With respect to the purchase of the Debt, Plaintiffs allege that IPI stated that it would oversee, monitor and remit collections from the Debt accounts. [Cpl., ¶ 37] Plaintiffs allege that IPI and the individual Defendants, to induce the purchase of the Debt, represented the existence of a "secondary market" of buyers for the Debt that was separate from IPI's operations and other primary investors, when the so-called secondary market to repurchase the Debt did not exist. [Cpl., ¶ 38]

After a successful purchase of an initial portfolio of Debt, and allegedly relying on representations of a "strong secondary market" for the Debt, Greenfish entered into a series of "Master Purchase Agreements" ("MPA's") with IPI dated February 10, 2009 and September 29, 2009. [Cpl., ¶ 57] Each agreement disclaims reliance on extracontractual statements. [Cpl., Ex. "D," Sec. 9] Further, the MPA's are fully "integrated' documents. [Cpl., Ex. "D," Sec. 10] Roundstone also alleges that, relying on representations of a secondary market, it entered into integrated Purchase and Sale Agreements for the purchase of Debt in 2008. [Cpl., ¶ 64 and Ex. "D," §10.6]

Greenfish then alleges that it once again relied on so-called oral representations of a "secondary market" of buyers for the Debt, which caused it to enter into five (5) separate, fully integrated "Purchase and Sale Agreements" for IPI to repurchase Debt in the hands of Greenfish, which Plaintiffs characterize as "Repurchase Agreements" (the "Greenfish RA's"). The Greenfish RA's state that though IPI **may** repurchase the Debt:[1]

---

[1] As the agreements make clear, there is no obligation to repurchase the Debt from Greenfish, but only liquidated damages to be paid for the failure to repurchase. The claim for liquidated damages against IPI

4

Buyer May, at its **sole option** and with prior written notice to Seller, **terminate this Agreement and**, therefore, not purchase the Accounts from Seller.  In the event Buyer terminates this Agreement, Buyer shall pay Seller an additional …($33,000) [i.e, 2% of the Purchase price] as liquidated damages, and **Seller shall not be entitled to any other remedy, at law or in equity**.  [Cpl., Ex. "Q," Sec. 2.4 (ii) and (iii)] (emphasis supplied).

The Greenfish RA's are all fully integrated contracts, and state:

This Agreement, the Confidentiality Agreement, and the instruments to be delivered by the parties pursuant to the provisions hereof **constitute the entire agreement between the parties and supersedes all prior agreements between the parties with respect to the subject matter hereof and thereof**. … Any amendments or alternative or supplementary provisions to this Agreement, must be made in writing and duly executed by an authorized representative or agent of each of the parties hereto. [Cpl., Ex. "Q," Sec. 10.6] (emphasis supplied).

Further, the Greenfish RA's contain an exclusive forum selection clause that states:

The parties agree that any legal actions between Buyer and Seller regarding the purchase of the Accounts hereunder **shall** be originated in a court of competent jurisdiction in the Commonwealth of Pennsylvania **with venue in Montgomery County, Pennsylvania**, and each party hereby consents to the jurisdiction of such court in connection with any action or proceeding initiated concerning this Agreement. [Cpl., Ex. "Q," Sec. 10.8] (emphasis supplied).

In accordance with its contractual rights, IPI exercised its termination option with respect to the Greenfish RA's.  [Cpl., ¶ 88]  The so-called "unfulfilled Repurchase Agreements" are central to the Plaintiffs' claims of fraud, RICO, and breach of contract, as well as Plaintiffs' other claims. [Cpl., ¶ 77-88]

---

for contractual violations is set forth by Greenfish (and Roundstone) in Count III of the Complaint, and also forms a part of the common law tort claims by the Plaintiffs against IPI and its agents in, *inter alia*, Count IV of the Complaint.

430803-1

The Plaintiffs assert that after the Greenfish RA's were executed, Roundstone relied upon assurances that IPI would also purchase Roundstone Debt. [Cpl., ¶ 90] IPI entered into a Repurchase Agreement with Roundstone (the "Roundstone RA"). The Roundstone RA states in relevant part:

> IPI shall have the right, at its sole option and upon notice to Seller, to extend for a period up to 120 days (the "120-Day Extension Period") the date on which the any Installment is due …. Prior to the end of the 120-day Extension Period, and upon further notice to Seller, **IPI may elect not to proceed with the payment of any such Installment, in which case neither party shall have any further obligation or liability to the other with respect to such Installment** including, but not limited to, any liability for liquidated damages of any kind whatsoever…

[Cpl., Ex. "S," Sec. 3] (emphasis supplied). The Roundstone RA is an integrated agreement. [Cpl., Ex. "S," Sec. 4] Plaintiffs allege that IPI thereafter exercised its right not to move forward with the Roundstone repurchases. [Cpl., ¶ 94] The failure to proceed with the repurchases, and to carry out the terms of Roundstone RA's, also forms a part of the Plaintiffs' joint claims for breach of contract in Count III of the Complaint.

Plaintiffs allege that Roundstone met with Zoldan (who is alleged to be an "employee" of IPI, see Cpl., ¶ 122) in August 2010, and at that time, Zoldan purportedly "confessed" that DSP had "made up valuations for the Debt portfolios IPI sold to investors, including the Plaintiffs." [Cpl., ¶ 98] Roundstone alleges that it engaged another collection entity, which became aware of 1600 duplicate accounts. [Cpl., ¶ 102] Roundstone alleges that it discovered other problems with the accounts. [Cpl., ¶ 104] Roundstone alleges that "it was discovered that $5,000,000 of the Accounts from one portfolio had been sold by IPI to another buyer." [Cpl., ¶ 105] The Plaintiffs allege that DSP, by Zoldan, fabricated invoices to create charges to offset the monies due to

6

Plaintiffs. [Cpl., ¶ 106] Plaintiffs allege that IPI created new firms to roll over Debt portfolios. [Cpl., ¶ 118] All of these allegations are repeated and form the basis for the breach of contract claim in Count III. [Cpl., ¶ 148-51]

The Plaintiffs jointly, throughout the Complaint, have set forth claims of civil RICO and RICO fraud and tort conspiracy against Defendants Shusterman, Feldman, Zoldan and DSP, centered upon the IPI agreements and IPI's conduct. [Cpl., ¶ 137 *et seq.*] Plaintiffs allege that the RICO Defendants joined together to form the RICO "enterprise," IPI. [Cpl., ¶ 139-40] Through this RICO enterprise, IPI, Plaintiffs allege that the RICO predicate acts involve oral representations overstating potential profit from the Debt portfolios and the value of the Debt portfolios, misrepresenting the existence of the secondary market to repurchase the Debt, procuring wire payments, and mismanaging the Debt accounts to siphon money from the Plaintiffs. [Cpl., ¶ 126]

Both Greenfish and Roundstone have set forth a breach of contract claim against IPI, arising from the same conduct. [Cpl., ¶ 148 *et seq.*] Greenfish and Roundstone have set forth a common law fraud in the inducement claim for damages arising from entering into the IPI agreements against Shusterman, Feldman, Zoldan and DSP. [Cpl., ¶ 152 *et seq.*] Greenfish and Roundstone allege that Weiner, Tucci, Perkiss, Duane and Fox "aided and abetted fraud," causing them to enter into the IPI agreements. [Cpl., ¶ 163 *et seq.*] Greenfish and Roundstone assert a claim against Weiner, Tucci, Perkiss, Duane and Fox for negligent misrepresentation [Cpl., ¶ 187 *et seq.*], and "innocent misrepresentation," in causing them to enter into the IPI agreements. [Cpl., ¶ 197 *et seq.*] Plaintiffs have also asserted a claim against IPI, Shusterman, Feldman, Zoldan, DSP and Perkiss for conversion [Cpl., ¶ 206 *et seq.*], and a claim against IPI, Shusterman and

7

Feldman for intentional interference with contractual relations.  [Cpl., ¶ 218]  All of these

claims in the Complaint arise from and are related to the IPI contractual relationships

between the parties, and are controlled by the obligations in those contracts.

## III.    LEGAL ARGUMENT

### A.    STANDARD OF REVIEW AND CHOICE OF LAW

In Thomas-Brady v. Liberty Mut. Fire Ins. Co., No. 11-2281, 2011 WL 6150643,

at *1 (E.D.Pa. Dec. 12, 2011), the Judge Goldberg of this Court explained:

> A defendant may move to dismiss a claim against it for
> improper venue pursuant to Federal Rule of Civil procedure
> 12 (b) (3).  If venue is proper but a forum selection clause
> points to another venue, a court may dismiss the claim
> pursuant to a 12(b) motion.  Under federal law, forum
> selection clauses are "presumptively valid" and
> enforceable.  Courts must enforce a forum selection clause
> provided it was not procured by fraud or overreaching, its
> enforcement does not violate a strong public policy of the
> forum, and so long as litigation in the selected forum would
> not be "so gravely difficult" as to effectively deprive a
> party of its day in court.  Id. (citations and internal
> quotations omitted).

"[F]raudulent inducement as to the entire contract will not invalidate an otherwise valid

forum selection clause unless the party challenging the clause shows that the clause itself

[as opposed to the entire agreement] was procured by fraud."  De Lage Landen Fin.

Svcs., Inc. v. Rasa Floors, LP, No. 08-00533, 2008 WL 4822033 (E.D.Pa. Nov. 4, 2008).

"In federal court, the effect to be given a contractual forum selection clause in diversity

cases is determined by federal not state law."  Hope Cancer Treatment Foundation, Inc. v.

Mountaineer Park, Inc., No. 06-1671, 2007 WL 184820 (W.D.Pa. Jan. 19, 2007).

430803-1

**B.**    **THE FORUM SELECTION CLAUSES IN THE GREENFISH RA'S REQUIRE DISMISSAL OF THIS ACTION**

As set forth below, this Court must dismiss all of the claims in this action based upon the forum selection clause in the Greenfish RA's, for the following reasons:

1.    The forum selection clause is mandatory and unambiguously requires all claims covered thereunder to be brought in state court in Montgomery County, Pennsylvania;

2.    The forum selection clause is broad and unconditional, and covers all tort and RICO claims, as well as contract claims, requiring all claims to be brought by Greenfish in Montgomery County, Pennsylvania;

3.    As agents of IPI (as alleged by Plaintiffs), Defendants, Shusterman, Feldman, Weiner, Tucci, Perkiss, Duane, Fox, Zoldan and DSP are each covered by the forum selection clauses in the Greenfish RA's;

4.    As a co-Plaintiff who has brought claims alongside Greenfish, arising from the same alleged pattern of racketeering activity, Roundstone, even though it is a non-signatory to the Greenfish RA's, is also bound by the forum selection clause in the Greenfish RA's;

5.    There is no inconvenience or prejudice to the Plaintiffs to avoid the venue provisions of the forum selection clause in the Greenfish RA's, as federal law permits the Plaintiffs' RICO claims to be brought in Pennsylvania because state courts have concurrent jurisdiction over civil RICO claims, there is no allegation of fraud in the procurement of the forum selection clause, and there is no inconvenience to any party arising from bringing this suit in Pennsylvania state court less than 20 miles from the chosen courthouse, and less than 1 mile from the office of Plaintiffs' counsel.

6.    Even if the forum selection clause is inapplicable to Roundstone, this Court must still dismiss the claims made by Greenfish under the exclusive venue clause in Greenfish's RA's; the Court should then dismiss or stay the claims made by Roundstone pursuant to the doctrine of *forum non conveniens*, to prevent the Defendants from

9

having to litigate the same claim in two different fora with
potentially inconsistent results and complications arising
from the application of *res judicata* and collateral estoppel.

1.     **The Forum Selection Clauses in the Greenfish RA's Require All
       Claims Covered Thereunder to be Brought in State Court in
       Montgomery County, Pennsylvania**

First, the forum selection clauses in the Greenfish RA's are mandatory, and state

that the exclusive venue for all claims covered by the forum selection clauses is the state

court in Montgomery County, Pennsylvania.  Because the Plaintiffs have brought this

case in the United States District Court for the Eastern District of Pennsylvania (which is

not in Montgomery County), this Court must dismiss all claims covered by the forum

selection clauses in the Greenfish RA's.

The forum selection clauses in the Greenfish RA's state in relevant part: "[A]ny

legal actions between Buyer and Seller regarding the purchase of the Accounts hereunder

shall be originated in a court of competent jurisdiction in the Commonwealth of

Pennsylvania with venue in Montgomery County, Pennsylvania…".  As to this language,

this Court and the Third Circuit have held unambiguously that this language is a

**mandatory** forum selection clause providing that parties covered thereunder can only

bring a lawsuit in a state court located in Montgomery County, Pennsylvania, and not in a

federal court.  Relm Wireless Corp. v. C.P. Allstar Corp., 265 F.Supp.2d 523 (E.D.Pa.

2003) (Pollak, J.); Wall Street Aubrey Golf, LLC v. Aubrey, 189 Fed.Appx. 82 (3d Cir.

2006); Thomas-Brady, 2011 WL 6150643, at *1.

For example, in Relm, the plaintiffs brought a breach of contract action in the

Eastern District of Pennsylvania.  The contract at issue contained a forum selection clause

virtually identical to the one in this case, which stated: "This Agreement shall be

construed and enforced in accordance with the laws of the Commonwealth of

Pennsylvania with venue in Chester County." The defendant sought dismissal of the case

pursuant to Federal Rule of Civil Procedure 12 (b) (3), based upon the forum selection

clause. The plaintiff opposed the motion, contending that the clause did not, on its face,

require the plaintiff to bring his claim in state court. Judge Pollak rejected this reasoning:

> This court agrees with Relm that the venue selection clause
> does not, on its face, mandate that suit be brought in a state
> court. Nonetheless, the clause makes perfectly clear that
> venue shall be in Chester County—and this courthouse is
> not in Chester County… [I]t trifles with language to
> describe a lawsuit filed in this court as one that has "venue
> in Chester County." That Congress contemplated a
> distinction between venue and jurisdiction is made clear by
> the change-of-venue provisions found in 28 U.S.C. § 1404,
> which empower district courts to transfer a civil action to
> another district, to another division in the same district, or
> even to "any place within the division in which [the civil
> action] is pending." Clearly, the Eastern District's territorial
> jurisdiction embraces multiple venues. And Congress has
> authorized this court to sit in federal courthouses located in
> five of the District's nine counties. But Chester County is
> not one of them. Thus, filing suit in this District
> contravened the terms of the venue selection clause to
> which Relm agreed. Accordingly, with the accompanying
> order, I will grant Allstar's motion to dismiss, pursuant to
> Federal Rule of Civil Procedure 12(b)(3). Relm, 265
> F.Supp.2d at 524.

In Aubrey, the Third Circuit approved of Judge Pollak's reasoning in Relm and

affirmed an Order from the District Court dismissing a case based upon a forum selection

clause. The plaintiff in Aubrey brought claims for, *inter alia*, misrepresentation, in the

Western District of Pennsylvania, despite a forum selection clause in the parties' lease

stating that it "shall be construed in accordance with the laws of the Commonwealth of

Pennsylvania, with venue laid in Butler County, Pennsylvania." In adopting the

reasoning of in Relm, the Third Circuit explained: "The language of this provision admits

11

of no other result than that the courts of Butler County are the exclusive forum in which the parties may obtain adjudication under their contract." <u>Aubrey</u>, 189 Fed.Appx. at 85.

Similarly, in <u>Thomas-Brady</u>, Judge Goldberg recently granted a motion to dismiss based upon a forum selection clause in an insurance contract. The insured was a resident of Montgomery County, and the plaintiff's insurance policy had a provision stating that suits against Liberty Mutual must be brought in the "county and state of [Plaintiff's] legal domicile at the time of [her] accident." Despite this provision, the plaintiff sued Liberty Mutual in the Eastern District of Pennsylvania. On Liberty's Rule 12 (b) (3) motion, the Court dismissed the complaint, and reasoned: "[The forum selection clause] mandates that suit be 'brought in a court of competent jurisdiction in the *county* where Plaintiff resided at the time of the accident.' Thus, because Plaintiff lived in Montgomery County, Pennsylvania at the time of her accident, proper venue lies in the Montgomery County Court of Common Pleas." <u>Thomas-Brady</u>, 2011 WL 6150643, at *1.

In this case, the Greenfish RA's contain exclusive venue provisions that unambiguously require "any legal action ... regarding the purchase of the Accounts hereunder" to be brought in Pennsylvania "with venue in Montgomery County, Pennsylvania." The Plaintiff has brought suit in the United States District Court for the Eastern District of Pennsylvania, which is not in Montgomery County. The foregoing authorities are crystal clear that for all claims covered by the Greenfish RA's, the state courts of Montgomery County are the "exclusive forum" to obtain relief. Accordingly, for all parties and claims covered by the Greenfish RA's, this Court must dismiss the action brought in this Court. Further, as set forth below, **all** parties and claims in this lawsuit are covered by the forum selection clause in the Greenfish RA's.

12

**2.      The Forum Selection Clauses in the Greenfish RA's Cover all Tort, RICO, Contract, and Other Claims in the Complaint**

Under settled Pennsylvania law, the forum selection clauses in the Greenfish

RA's apply not only to Plaintiffs' breach of contract claim, but apply also to **all** claims in

the Complaint, including tort, contract, RICO and other claims.

The forum selection clause in the Greenfish RA's, which states that "any legal

actions between Buyer and Seller regarding the purchase of the Accounts hereunder shall

be originated in a court of competent jurisdiction in the Commonwealth of Pennsylvania

with venue in Montgomery County, Pennsylvania," is "broad and unconditional," and

therefore applies to "all claims," and not merely contract claims.  This principle is

displayed in Oak Systems, Inc. v. Francotyp-Postalia, Inc., No. 01-2794, 2002 WL

442104 (E.D.Pa. Feb. 5, 2002).  In Oak Systems, a case involving a claim of civil

conspiracy, Judge Robreno of this Court was faced with a forum selection clause in a

contract between the plaintiff and defendant stating: "[a]ny claims or legal actions shall

be taken only before the proper court or panel in DuPage County, Illinois."  Referencing

other cases interpreting forum selection clauses calling for "any legal action" to be

brought in a specific location, it was found that where a forum selection clause refers to

"any action" and does not expressly limit the actions covered to breach of contract, the

forum selection clause was "broad and unconditional," and the following rule applied:

> [B]road, unconditional forum selection clauses which
> mandate jurisdiction in a specific forum, like the one at bar,
> apply to all claims, whether they be based in tort or
> contract, and shall be enforced.  Id. at *2.

See also TriState HVAC Equipment, LLP v. Big Belly Solar, Inc., 752 F.Supp.2d 517

(E.D.Pa. 2010) (holding that where a forum selection clause covers for "any legal

430803-1

action," the clause "applies to both … contract and tort claims"); <u>Hope Cancer Treatment</u>
<u>Foundation, Inc. v. Mountaineer Park, Inc.</u>, No. 06-1671, 2007 WL 184820 (W.D.Pa. Jan.
19, 2007) ("Absent limiting language …broad, unconditional forum selection clauses
which mandate jurisdiction in a specific forum … apply to all claims, whether they be
based in tort or contract, and shall be enforced.").

Further, where a forum selection clause is not limited to contract claims, the
clause will cover claims for Civil RICO to the same extent as other tort claims. <u>Crescent</u>
<u>Intern., Inc. v. Avatar Communities, Inc.</u>, 857 F.2d 943, 944-46 (3d Cir. 1988) (holding
that forum selection clause applied to RICO, fraud, unfair competition, and tortious
interference claims because they implicated the terms of the agreement). Accordingly,
the broad and unconditional language of the forum selection clause in the Greenfish RA's
applies to all claims in this case.

Even if the language of the forum selection clauses in the Greenfish RA's was
narrower, the clause would still apply to all claims in this case. The United States Court
of Appeals for the Third Circuit has held:

> If forum selection clauses are to be enforced as a matter of
> public policy, that same public policy requires that they not
> be defeated by artful pleading of claims such as negligent
> design, breach of implied warranty, or misrepresentation.
> Coastal's claims ultimately depend on the existence of a
> contractual relationship between [the parties], and those
> parties bargained for [a different] forum. We agree with
> those courts which have held that where the relationship
> between the parties is contractual, the pleading of
> alternative non-contractual theories of liability should not
> prevent enforcement of such a bargain. <u>Coastal Steel Corp.</u>
> <u>v. Tilghman Wheelabrator Ltd.</u>, 709 F.2d 190, 203 (3d Cir.
> 1983), <u>cert. den.</u>, 464 U.S. 938 (1983).

Thus, where claims in a complaint "involve allegations arising out of the agreement

[which] implicate[] its terms," "pleading alternate non-contractual theories is not alone

enough to avoid a forum selection clause if the claims asserted arise out of the contractual

relation and implicate the contract's terms." Crescent, 857 F.2d at 944.

For example, in Crescent, the plaintiff brought RICO, fraud, unfair competition,

and tortious interference claims against a defendant in this Court.  The claims arose out of

a real estate transaction pursuant to a contract that contained a forum selection clause

stating: "any litigation upon any of [the contract's] terms.... shall be maintained in a state

or federal court in Miami, Florida."  The Court found that although [unlike the forum

selection clause in this case] the clause in Crescent contained limiting language confining

the effect of the forum selection clause to breaches of contract, the forum selection clause

nevertheless required dismissal.  The Third Circuit explained:

> Although only one of Crescent's claims is based on a
> breach of contract theory, all of them involve allegations
> arising out of the agreement implicating its terms. The
> cases ... demonstrate a principle that pleading alternate
> non-contractual theories is not alone enough to avoid a
> forum selection clause if the claims asserted arise out of the
> contractual relation and implicate the contract's terms. The
> narrow interpretation suggested by Crescent would permit
> avoiding a forum selection clause by simply pleading non-
> contractual claims in cases involving the terms of a contract
> containing the parties' choice of forum. Adopting it runs
> counter to the law favoring forum selection clauses in all
> three jurisdictions whose law might apply.  Id. at 944-45.[2]

In this case, the Plaintiffs' Complaint relies heavily on the transactions involving

the Greenfish RA's to establish the Plaintiffs' claims for fraud and RICO, as well as the

other claims, and the allegations respecting the Greenfish RA's and that IPI acted as the

enterprise through its agents to commit the fraud are central to all of the claims in the

---

[2] See also TriState, supra, ("courts have generally held that a forum-selection clause applies to tort and other non-contract claims that require interpretation of the contract.")

Plaintiffs' Complaint. [Cpl., ¶ 77-88]  Further, the Greenfish RA's are all fully integrated documents which supersede any and all prior agreements and representations. Accordingly, any court that hears this case will have to interpret the Greenfish RA's to determine whether, under Pennsylvania's "parol evidence rule" and "gist of the action doctrine," Plaintiffs can even *introduce* any evidence of *any* pre-contractual representation or agreement.[3]

Further, the Greenfish RA's supersede all previous contracts between the parties, and have liquidated damages provisions stating that IPI would only be liable for 2% of the value of the contracts in the event of a breach.  Obviously, the Plaintiffs in this case seek millions upon millions of dollars in damages over and above those liquidated damages.  Accordingly, this Court will have to analyze the Greenfish RA's to determine whether any damages are recoverable over and above the liquidated damages.

Thus, the allegations respecting the Greenfish RA's, and the contracts and negotiations prior to the Greenfish RA's, are central to the claims of both Greenfish and Roundstone, and this Court must determine the scope of the Greenfish RA's in this action.  Indeed, the language of the Greenfish RA's will have to be analyzed to determine whether any party can even introduce any evidence in this case.  Because all of the claims in this case arise out of the contractual relation, implicate the terms of the Greenfish RA's, and require interpretation of the Greenfish RA's, the forum selection clause in this case applies to all of the claims in this case.  Crescent, 857 F.2d at 944.

Of course, more fundamentally, even without reference to Pennsylvania's policy

---

[3] See, e.g., Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) (parol evidence rule precludes evidence of pre-contractual representations in an integrated contract); eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa.Super. 2002) (holding that the Pennsylvania gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.").

of enforcing forum selection clauses described in <u>Crescent</u> and its progeny, the plain language of the forum selection clause is "broad and unconditional," and the forum selection clauses in the Greenfish RA's therefore apply to "all claims," including tort, contract and RICO. <u>Oak Systems</u>, 2002 WL 442104, at *2. Accordingly, the forum selection clause in the Greenfish RA's applies to all of the Plaintiffs tort, contract, RICO and other claims in this case.

### 3. The Forum Selection Clauses in the Greenfish RA's Apply to all Defendants

It is well-settled under Pennsylvania law that forum selection clauses in contracts bind not only the parties to that contract, but also non-signatory agents of the parties to the contract with respect to the transaction or transactions at issue. In this case, although the Greenfish RA's were between Greenfish and IPI, the Plaintiffs have sued other entities including IPI principals Shusterman and Feldman, IPI agents and attorneys Weiner, Tucci, Perkiss, Duane and Fox, and alleged IPI employees Zoldan and DSP. The Plaintiffs have alleged expressly that all of these entities were agents of IPI with respect to the transactions at issue. [Cpl, ¶¶ 14-22 and 122] As alleged agents, Shusterman, Feldman, Weiner, Tucci, Perkiss, Duane, Fox, Zoldan and DSP are covered by the forum selection clause in the Greenfish RA's even though they are non-signatories.

Non-signatory agents are covered by forum selection clauses where it is alleged "that the agent was acting on behalf of the principal and that the cause of action arises out of that relationship." <u>E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.</u>, 269 F.3d 187 (3d Cir. 2001). This principle is illustrated by the Third Circuit's holding in <u>Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 7 F.3d 1110 (3d Cir. 1993). In <u>Pritzker</u>, pension plan trustees brought action against a broker, its

financial consultant, and sister corporation to recover for violations of ERISA. The

agreement between the parties was subject to a forum selection clause specifying

arbitration.[4] The defendants moved to compel arbitration not only as to the signatory, but

also as to non-signatory entity Merrill Lynch Asset Management, Inc. ("MLAM"), and

non-signatory individual Belinda Stewart ("Stewart"). The trustee plaintiffs argued that

their claims against MLAM and Stewart were not covered by the arbitration clause

because they were not signatories. The Third Circuit disagreed. As to Stewart, the Third

Circuit explained that "[u]nder traditional agency theory, [Stewart] is subject to

contractual provisions to which MLPF & S is bound...Because a principal is bound under

the terms of a valid arbitration clause, its agents, employees, and representatives are also

covered under the terms of such agreements." As to MLAM, the Court explained that

"Agency logic has been applied to bind non-signatory business entities to arbitration

agreements." Thus, the non-signatory agents were all covered by the forum selection

clause specifying arbitration. Pritzker. 7 F.3d at 1121-23.

   As recognized by the United States Supreme Court in Scherk v. Alberto-Culver

Co., 417 U.S. 506, 519 (1974), "[a]n agreement to arbitrate before a specified tribunal is,

in effect, a specialized kind of forum selection clause that posits not only the situs of suit

but also the procedure to be used in resolving the dispute." Because the determination of

parties to an arbitration forum selection clause is "closely analogous" to a non-arbitration

forum selection clause, the reasoning of Pritzker and other cases holding that non-

signatories to an arbitration agreement are bound by the agreement pursuant to "agency

---

[4] Coincidentally, the District Judge who made the initial ruling in Pritzker, which was the subject of the
Third Circuit's ruling, was the Honorable Charles R. Weiner, now deceased, who is the father of Defendant
Weiner. Defendant Weiner, together with all of the attorney-Defendants, was unfairly named by Plaintiffs'
counsel in this case.

18

logic" also applies equally to the interpretation of all forum selection clauses.  Hay Acquisition Co., I, Inc. v. Schneider, No. 04-1236, 2005 WL 1017804, at *8 (E.D.Pa. Apr. 27, 2005) ("In the closely-analogous arbitration clause context, the Third Circuit explicitly stated its willingness to hold 'a variety of non-signatories ... bound by such agreements under ordinary common law contract and agency principles.'").

Here, Plaintiffs have alleged that Shusterman, Feldman, Weiner, Tucci, Perkiss, Duane, Fox, Zoldan and DSP, non-signatories to the Greenfish RA's, were agents acting on behalf of IPI with respect to the transactions at issue (including the transactions to enter into the Greenfish RA's), and Plaintiffs' causes of action arise out of their actions as alleged agents of IPI.  Indeed, the Plaintiffs' RICO claim alleges that Shusterman, Feldman, Zoldan and DSP "associated together, by and through their employment by, and/or participation in the conduct of IPI, with the common purpose of using IPI as a vehicle for defrauding Plaintiffs of more than $40 million in investment monies." [Cpl., ¶ 117]  Weiner, Tucci, Duane, Fox and Perkiss are also alleged to have acted as attorney-agents of IPI to effectuate the fraudulent scheme.  The law is clear that as non-signatory agents of IPI, the forum selection clauses in the Greenfish RA's apply equally to Shusterman, Feldman, Weiner, Tucci, Perkiss, Duane, Fox, Zoldan and DSP, and to all of the claims against them.

**4.     The Forum Selection Clauses in the Greenfish RA's Apply to Roundstone**

Because Roundstone has joined with Greenfish as a co-Plaintiff (with the same counsel) to bring suit against Greenfish, based upon the very same conduct in each and every Count of the Complaint that Greenfish has placed at issue, Roundstone is bound to the Greenfish RA's to the same extent as Greenfish.

19

Under federal law, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509 (9th Cir. 1988) (citing Clinton v. Janger, 583 F.Supp. 284, 290 (N.D.Ill. 1984) and Coastal Steel, 709 F.2d at 202-03); see also Environmental Tectonics Corp. v. Royal Thai Air Force, No. 93-5855, 1994 WL 82002, at *5 (E.D.Pa. Mar. 15, 1994). Thus, non-signatories to forum selection clauses are bound by contractual forum selection clauses where the non-signatories are "closely related to the contractual relationship or they should have foreseen governance by the clause." Jordan v. SEI Corp., No. 96-1616, 1996 WL 296540 (E.D.Pa. June 4, 1996); see also PGT Trucking, Inc. v. Lyman, No. 11300, 2011 WL 2462490 (W.D.Pa. May 16, 2011); Royal Thai Air Force, 1994 WL 82002, at Id; Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998).

This standard is met where a non-signatory plaintiff voluntarily brings a lawsuit alongside a signatory on the same claims, because a signatory cannot avoid a forum selection clause simply by bringing a lawsuit alongside a non-signatory. Beck v. CIT Group/Credit Finance, Inc., No. 94-5513, 1995 WL 394067 (E.D.Pa. June 29, 1995); Drucker's, Inc. v. Pioneer Electronics (USA), Inc., No. 93-1931, 1993 WL 431162 (D.N.J. Oct. 20, 1993); Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P., 254 F.3d 753 (8th Cir. 2001). Likewise, this "closely related" test is satisfied where the claims made by the signatory and non-signatory in a lawsuit are "substantially identical." Universal Grading Service v. eBay, Inc., No. 08-3557, 2009 WL 2029796, at *16 (E.D.N.Y. June 10, 2009). Further, non-signatories will be bound by a forum selection clause where their claims are "integrally related" to the claims of the signatory, such that

it is appropriate to have all claims made in the same forum.  Bonny v. Society of Lloyd's,

3 F.3d 156, 162-63 (7th Cir. 1993);

For example, in Beck, a plaintiff, Mr. Beck, was a signatory on a loan agreement

with the defendant.  The loan agreement contained a forum selection clause specifying

that claims must be brought in New York.  After disagreements arose between the parties,

Mr. Beck and his wife (a non-signatory to the loan agreement) brought claims for fraud

and RICO against the defendant in the Eastern District of Pennsylvania.  The defendant

contended that the claims of both Mr. Beck and Mrs. Beck should be transferred to New

York pursuant to the forum selection clause.  Judge Waldman of this Court agreed.  As to

Mrs. Beck, Judge Waldman explained that although she was a non-signatory, Mrs. Beck

was nonetheless bound by the loan agreement because to refuse to apply the forum

selection clause to her would permit the plaintiffs to evade the forum selection clause:

> Assuming that Mrs. Beck has standing on the claims
> asserted, she is similarly subject to the forum selection
> provisions.  Moreover, given the relationship of the Becks
> and the circumstances presented, it would be wholly
> inappropriate to permit Mr. Beck to evade the forum
> provision in his guaranty and elsewhere by initiating suit
> jointly with Mrs. Beck.  Beck, 1995 WL 394067, at *6.

In Marano, a franchisee, Marano Enterprises, brought an action alleging, *inter*

*alia*, fraud, against a franchisor, Z-Teca.  The franchise agreement contained a forum

selection clause requiring suit to be brought in Colorado.  After plaintiffs brought suit in

Missouri, the Missouri federal district court dismissed the case based on the forum

selection clause.  On appeal, one of the named Plaintiffs, Leon Marano, argued that he

was not bound by the forum selection clause because he was not a signatory to the

agreement containing the forum selection clause.  The Eighth Circuit disagreed:

21

> [Non-signatory] Leon Marano joined with Marano
> Enterprises and Bruce Marano in bringing suit against Z-
> Teca under the agreements, arguably acquiescing in the
> forum-selection clauses within those agreements. As a
> voluntary plaintiff, he will not now be heard to object to
> jurisdiction limited to the venue(s) to which his co-
> plaintiffs agreed. Marano, 254 F.3d at 758.[5]

In this case, Plaintiffs allege that Roundstone was the victim of the same pattern

of racketeering activity as Greenfish, and the claims made by both are substantially

identical. The claims made by Roundstone are "integrally related" to the claims made by

Greenfish, and they rest on the same facts. In fact, the claims respecting Greenfish

represent the vast majority of the claims of misconduct in the 233-paragraph Complaint.

Roundstone voluntarily brought this lawsuit alongside Greenfish; in fact, the common

law fraud conduct and the breach of contract claims in Count III are jointly brought

counts, which rely on the same contracts, violations and conduct. The same jointly pled

counts containing the tort claims against IPI's lawyers, IPI, Shusterman and Feldman rely

upon each of the Plaintiffs receiving the same oral statements, and allege that they are

victims of the same conduct. It cannot be argued (without violating Rule 11) that the

Plaintiffs and their lawyers did not read the contracts. Therefore, it was plainly

foreseeable that all of the Plaintiffs would be covered by the forum selection clauses in

the Greenfish RA's. Accordingly, just like in Bonny, co-Plaintiffs Greenfish and

Roundstone are "integrally related" to each other (and share the same counsel), such that

suit against all defendants should be kept in the same forum. Because the forum selection

clause in the Greenfish RA's is clear, this Court should dismiss all of the claims made by

both Greenfish and Roundstone pursuant to the Greenfish RA's.

---

[5] See also Bonny, 3 F.3d at 162-63 ("We thus hold that the district court did not err in determining … that the local defendants are integrally related to the moving defendants such that the suit against all defendants should be kept in a single forum").

22

**5.     This Court Should Dismiss the Claims Made by Roundstone Pursuant to _Forum Non Conveniens_**

There is no dispute that the forum selection clause in this case applies to the claims made by Greenfish against all of the Defendants in this case.  Thus, this Court must honor the forum selection clause and dismiss the claims made by Greenfish.  However, should the Court find that the forum selection clause does not apply to Roundstone, this Court should still dismiss or stay all of the claims made by Roundstone, to either permit Roundstone to continue to hang on to the coattails of its co-Plaintiff (with the much larger claim), Greenfish, to permit Roundstone to bring its claims in Montgomery County alongside Greenfish, or to await the outcome of the larger claim of Greenfish to be resolved, and to serve the interests of judicial economy and to prevent oppression to all Defendants.  Any other result would permit the "tail to wag the dog."

In Sinochem Int'l. Co., Ltd. v. Malaysia Int'l. Shipping Corp., 549 U.S. 422 (2007), the United States Supreme Court explained: "[a] district court may dispose of an action by a _forum non conveniens_ dismissal … when considerations of convenience, fairness, and judicial economy so warrant."  Id. at 432.  See also Consol Energy Inc. v. Berkshire Hathaway, Inc., 252 Fed.Appx. 481, 483 (3d Cir. 2007) (same).  As long as an "adequate alternative forum exists," the Court may dismiss a claim based on _forum non conveniens_ based upon considerations of oppression to the defendants and the Court's own administrative issues.  Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 160 (3d Cir. 2010).

In this case, even if the Court finds that the forum selection clause in the Greenfish RA's does not cover Roundstone expressly, this Court should still dismiss Roundstone's claims along with Greenfish's based on the doctrine of _forum non_

*conveniens.* First, state courts may exercise concurrent jurisdiction over RICO claims. Tafflin v. Levitt, 493 U.S. 455, 458 (1990), Osiris Enterprises v. Borough of Whitehall, 236 Fed.Appx. 760, 764 (3d Cir. 2007). Thus, an adequate alternative forum (Montgomery County) exists for Roundstone to bring its claims alongside Greenfish.

Further, because Greenfish is obviously bound by the forum selection clause, and must litigate its claims (which are the same claims as Roundstone) in Montgomery County, the refusal to dismiss Roundstone would force the Plaintiffs to litigate the same burdensome and costly (and frivolous) RICO and other claims in two different fora. This would double the expense for all Defendants, and require two different courts to resolve these issues. Moreover, litigating the same claims in two different fora would likely lead to inconsistent rulings on discovery, pretrial motions and trial, and add multiple layers of legal issues such as collateral estoppel and *res judicata.* Thus, Roundstone's claims should be dismissed without prejudice pursuant to the doctrine of *forum non conveniens.*

6.   **Dismissal Would be Consistent With Public Policy, Would not be "Gravely Difficult," And There are no Claims of Fraud With Respect To the Forum Selection Clause**

Finally, it must be noted that there are no countervailing considerations that could preclude this Court from enforcing the forum selection clause. For example, although "fraud" may permit a party to avoid a forum selection clause, this consideration only applies where "the party challenging the clause shows that the clause itself was procured by fraud." De Lage Landen, supra. Here, there is no claim that the forum selection clause itself was procured by fraud.

Further, as set forth above, the Montgomery County Court may exercise concurrent jurisdiction over the RICO and other claims in this case. Tafflin, supra;

24

Osiris, supra.  Thus, federal policy permits state courts to hear RICO claims.  Also, the

office of the Plaintiffs' attorney is approximately one mile from the Montgomery County

line, and the courthouse of the Eastern District of Pennsylvania in Philadelphia is less

than twenty miles from the Montgomery County Courthouse.  Plainly, there are no

impediments to the Plaintiffs litigating their claims in Montgomery County, and it would

certainly not make trial "gravely difficult" for the Plaintiffs.  Thus, no extraneous

considerations would prevent this Court from enforcing the forum selection clause.

## IV.   CONCLUSION

For any and all of the foregoing reasons, as set forth more fully above, Defendant,

International Portfolio, Inc., respectfully requests that this Court grant its motion to

dismiss and dismiss all claims made by the Plaintiffs against all of the Defendants in this

case, and grant such other and further relief as the Court deems appropriate.  Because of

the importance of this threshold issue on the venue for this case, IPI files this motion

within days of its being served on this discrete issue of venue without prejudice to its

right to join in later-filed motions to dismiss on other substantive issues of law.

Respectfully Submitted,

**SPECTOR GADON & ROSEN, P.C.**

By:     /s/ Paul R. Rosen, Esq./Andrew J. DeFalco, Esq.
        Paul R. Rosen, Esquire
        Andrew J. DeFalco, Esquire
        1635 Market Street, 7th Floor
        Philadelphia, Pennsylvania  19103
        (215) 241-8888 (Main)
        (215) 241-8844 (Fax)
        Counsel for Defendant
        International Portfolio, Inc.

Date:  January 3, 2012

25

430803-1

## CERTIFICATION OF SERVICE

I, Andrew J. DeFalco, Esquire, hereby certify that a true and correct copy of the

Motion to Dismiss of Defendant International Portfolio, Inc. was served upon the

following via email notification from the Court and U.S. Mail on the date set forth below:

Mark S. Haltzman, Esquire
Silverang & Donahoe, LLC
595 E. Lancaster Ave, Suite 203
St. Davids, PA 19087

Defendant Richard Shusterman
2255 Glades Road, Suite 324A
Boca Raton, Fla. 33431

Defendant Robert Feldman
1310 Fenimore Lane
Gladwyne, PA

DSP Holdings, Inc. d/b/a Debt Sales Partners
36 Munroe Falls Ave.
Munroe Falls, Oh. 44262

Defendant Michael Zoldan
36 Munroe Falls Ave.
Munroe Falls, Oh. 44262

Defendant William Weiner, Esquire
Suite 200
1940 Route 70 East
Cherry Hill, NJ 08003

Duane Morris, LLP
Suite 200
1940 Route 70 East
Cherry Hill, NJ 08003

Peter J. Tucci, Esquire
2700 Kelly Road
Suite 300
Warrington, PA 18976

Fox Rothschild, LLP
2700 Kelly Road

26

430803-1

Suite 300
Warrington, PA 18976


By___ Andrew J. DeFalco, Esq. _____
Andrew J. DeFalco, Esquire


Date:  January 3, 2012