IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREENFISH II, L.P., <br> By and Through its General Partner <br> PURPLEFISH, LLC., et al. <br>              Plaintiffs, | : <br> : <br> : <br> : <br> : | CIVIL ACTION |
| v. | : | No.11-7628 |
| INTERNATIONAL PORTFOLIO, INC., et al. <br>              Defendants. | : <br> : <br> : <br> : | |

**Goldberg, J.**                                                                                                    **July 23, 2012**

**Memorandum Opinion**

      This case involves Plaintiffs' claim that Defendants engaged in a "widespread, premeditated pattern of deception and fraud" involving the solicitation of investment money for the purchase of medical debt from hospitals.[1] (Comp., ¶ 1.) Presently at issue is which of Plaintiffs' claims, if any, enjoy proper venue in the Eastern District of Pennsylvania, and which should be either dismissed or transferred pursuant to 42 Pa.C.S. § 5103 to the Court of Common Pleas of Montgomery County. These questions arise from a motion to dismiss based upon improper venue.

**I.      Factual and Procedural History**

      Because multiple Plaintiffs and Defendants are involved in this case, and the claims entail several complicated business transactions, we first provide a factual background of the allegations and business relationships between the parties.

      Plaintiffs, who are investors in discounted portfolios of medical receivables, have sued the

---

[1] Plaintiffs in this action include Greenfish II, L.P. ("Greenfish"), and several other capital investment entities collectively referred to by the parties as the "Roundstone" Plaintiffs. For the sake of simplicity, we will adopt the labels used by the parties, and refer to Plaintiffs as either "Greenfish" or "Roundstone."

following Defendants: International Portfolio, Inc. ("IPI"), its principals Richard Shusterman and Robert Feldman ("IPI Principals"), IPI's attorneys William Weiner, Peter Tucci and Gary Perkiss, as well as the law firms of Fox Rothschild LLC and Duane Morris LLC ("Attorney Defendants"), DSP Holdings, Inc. ("DSP"), and its principal Michael Zoldan. Plaintiffs allege that IPI, through its principals and attorneys, fraudulently induced them into purchasing portfolios of medical debt by intentionally misrepresenting the existence of a secondary market for resale of that debt. Plaintiffs further assert that DSP and Zoldan assisted the scheme by creating fraudulent valuations of the debt portfolios at the direction of IPI. Plaintiffs claim that these fraudulent misrepresentations were part of a scheme by Shusterman, Feldman, Zoldan and DSP to use IPI to sell the same debt to multiple investors, such as Plaintiffs, and thereafter use the money solicited from new investors to repurchase accounts from previous investors, thereby creating the illusion of a secondary market. (Comp., ¶¶ 1-7, 98, 126.)

According to Plaintiffs, Defendants represented that IPI would purchase debt from certain hospitals, bundle it into "portfolios" and sell it directly to Plaintiffs.[2] (Id., ¶¶ 34-35.) IPI and DSP would then supplement information regarding the outstanding debts, begin collection efforts, and monitor and remit to Plaintiffs any payments made toward the debts. (Id., ¶¶ 38-41.) Plaintiffs claim that Defendants fraudulently represented that a strong secondary market of buyers for the portfolios existed, and that IPI would assist Plaintiffs to resell the portfolios. (Id.)

Plaintiffs allege that they relied upon these representations in purchasing several portfolios from IPI. Specifically, Plaintiff Roundstone purchased ten portfolios between September 2008 and

---

[2]Plaintiffs refer to this debt as "zero agency" because it had been previously held only by the original creditor (the hospitals), and not by any other collection entity or investor. (Comp., ¶ 35.)

June 2010, and Plaintiff Greenfish purchased five portfolios throughout 2009. (Comp., Exs. D, L; ¶¶ 56-57.) As contemplated from the outset, Greenfish and IPI subsequently entered into "Repurchase Agreements" whereby IPI agreed to repurchase, purportedly in order to resell to third-party buyers, the first four of the portfolios previously sold to Greenfish ("Portfolios 1-4"). (Comp., ¶ 80; Ex. Q.) Each of the Greenfish Repurchase Agreements contained the following forum selection clause:

> The parties agree that any legal actions between Buyer and Seller regarding the purchase of the Accounts hereunder shall be originated in a court of competent jurisdiction in the Commonwealth of Pennsylvania with venue in Montgomery County, Pennsylvania, and each party hereby consents to the jurisdiction of such court in connection with any action or proceeding initiated concerning this Agreement.
>
> (Comp., Ex. Q, § 10.8)

Those agreements also contained the following integration clause:

> This Agreement, the Confidentiality Agreement, and the instruments to be delivered by the parties pursuant to the provisions hereof constitute the entire agreement between the parties and supersedes all prior agreements between the parties with respect to the subject matter hereof and thereof. To the extent there exists any inconsistency between the provisions of this Agreement and any other agreement entered into between the parties, the provisions of this Agreement shall govern.
>
> (Id., § 10.6.)

IPI entered into similar Repurchase Agreements with Roundstone in February 2010. (Comp. Ex. S.) However, the Roundstone Repurchase Agreements do not contain a forum selection clause. (Id.) Aside from a small portion of two of the Greenfish portfolios, IPI has not repurchased any of the portfolios subject to the Greenfish or Roundstone Repurchase Agreements. (Comp., ¶¶ 88, 96.)

In the Summer of 2010, Roundstone became concerned with DSP's collection efforts, and met with Zoldan to discuss those concerns. (Id., ¶ 97.) Roundstone alleges that at this meeting Zoldan told them that he had fraudulently created portfolio valuations at the direction of IPI. (Id., ¶ 98.) Roundstone then hired Shafritz and Brate, P.A. ("S&B") to audit and assume management of the portfolios. (Id., ¶ 100.) The S&B audit allegedly uncovered numerous problems with the portfolios, including the sale of debt previously owned by other investors (i.e., not "zero agency"), the sale of debt to multiple investors simultaneously, and the failure to remit payment to Plaintiffs for debt that had been paid or settled. (Id., ¶¶ 101-109.)

Plaintiffs instituted this action on December 13, 2011, asserting claims for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), breach of contract, fraud in the inducement, aiding and abetting fraud, negligent and innocent misrepresentation, conversion/misappropriation, intentional interference with contractual relations, and unjust enrichment. On January 3, 2012, IPI moved, pursuant to Rules of Civil Procedure 12(b)(3) and 12(b)(6), to dismiss Plaintiffs' entire complaint based upon the forum selection clause contained in the Greenfish Repurchase Agreements. (Doc. No. 18.) DSP, Zoldan and the Attorney Defendants also filed motions to dismiss, arguing that Plaintiffs' complaint failed to adequately state a claim against them. Plaintiffs opposed Defendants' motions, and oral argument was held on May 29, 2012. (Doc. No. 76.)

Following oral argument, and in light of the forum selection clause in the Greenfish Repurchase Agreements, Plaintiffs withdrew their opposition to IPI's motion, but only as it related to Greenfish's breach of contract claims. (Doc. No. 82.) Plaintiffs then moved, with agreement from IPI, to transfer all remaining claims to the Court of Common Pleas of Montgomery County pursuant

4

to 42 Pa.C.S. § 5103, asserting that § 5103 authorizes the transfer of the entire matter to an appropriate state court upon dismissal of any claim for improper venue. Both Plaintiffs and IPI agree that a transfer of the entire case would best serve the interests of judicial economy and avoidance of piecemeal litigation.

DSP, Zoldan, and the Attorney Defendants oppose the transfer motion filed by Plaintiffs and IPI, and posit that § 5103 applies only where the court lacks jurisdiction. These Defendants further argue that § 5103 operates automatically without a transfer order upon a litigant's filing in state court of a federal court's final order of dismissal. Therefore, these Defendants ask that we deny the request to transfer the entire matter, and decide the pending motions to dismiss, including IPI's motion based upon the forum selection clause in the Greenfish Repurchase Agreements.

Given the respective positions of the parties, it is appropriate to first consider whether Plaintiffs' concession that its breach of contract claim should be dismissed justifies transfer of the entire action to state court. Because we conclude that transfer of the entire action is inappropriate, we will consider whether the forum selection clause in the Greenfish Repurchase Agreements requires dismissal of any of Plaintiffs' other claims.

**II.     Transfer Under 42 Pa.C.S. § 5103**

42 Pa.C.S. § 5103 provides that where a matter is filed in a court "which does not have jurisdiction," the matter may be transferred to a proper court within the Commonwealth, where it "shall be treated as if originally filed in the transferee court . . . on the date first filed in [the original] court." This statute specifically states that it applies to matters "transferred or remanded by any United States court for a district embracing any part of" the Commonwealth. 42 Pa.C.S. § 5103. The United States Court of Appeals for the Third Circuit has approved of the use of the statute to

transfer cases from federal to state court. See Weaver v. Marine Bank, 683 F.2d 744 (3d Cir. 1982).

"The policy behind this section is that a plaintiff who files a timely action in Federal District Court should not lose his opportunity to litigate that case on the merits simply because he is in error regarding federal jurisdiction." Suburban Roofing Co., Inc. v. Day & Zimmerman, Inc., 578 F. Supp. 374, 375 (E.D. Pa. 1984) (citing Weaver, 683 F.2d 744). The statute also prevents duplicative filing by permitting a plaintiff to pursue a suit in federal court without the necessity of protectively filing an action in state court should the district court subsequently determine that it lacks jurisdiction. Id.

In accordance with this purpose, and the statute's plain language, federal courts within the Commonwealth have applied § 5103 to transfer matters over which they lack jurisdiction. See Weaver, 683 F.2d 744 (no subject matter jurisdiction over state claims following dismissal of federal claim at summary judgment); Suburban Roofing Co., Inc., 578 F. Supp. 374 (lack of subject matter jurisdiction due to incomplete diversity); Walde v. Hi-Ranger, Inc., 1987 WL 19891 (E.D. Pa. Nov. 9, 1987) (same).

By its plain language, § 5103 applies only where the court "does not have jurisdiction." 42 Pa.C.S. § 5103 (emphasis added). In this case, however, no party has challenged the Court's jurisdiction. In our view, this circumstance renders § 5103 inapplicable. Although the parties in this case dispute whether venue is proper in light of the forum selection clause, that question is entirely separate from whether the Court has jurisdiction.

We recognize that one court within the Third Circuit has transferred a matter to state court pursuant to § 5103 based upon a forum selection clause. See Heide v. Seven Springs Farm, Inc., 2009 WL 1346035 (W.D. Pa. May 13, 2009). In so doing, that court noted that "Pennsylvania courts apply a fairly broad interpretation to section 5103," and that transfer would further the purposes of

6

the statute. Id., at *10-12.  The court reasoned that transfer would protect against the possibility that the cause of action would be barred in state court by the statute of limitations, and would obviate the need for duplicative protective filings where proper venue is at issue.  Id.

It may well be that transfer under these circumstances would further efficient litigation and ease the burden on plaintiffs in the same way that it does where the court lacks jurisdiction. However, these practical benefits provide no legal basis for us to ignore the unambiguous language of the statute in determining its meaning and scope.  See Hoster v. Gatco, Inc., 130 S.Ct. 1575, 1577 (2010) ("If the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words.").  By its plain terms, § 5103 permits transfer only when a matter has been filed in a court which lacks jurisdiction.  Majek Fire Protection, Inc. v. Carusone Construction, Inc., 2006 WL 1704562 (E.D. Pa. Jun. 13, 2006) (dismissal on the basis of improper venue is outside the scope of 42 Pa.C.S. § 5103.)  As there has been no challenge to the Court's jurisdiction, transfer under § 5103 is not available.[3]

### III.  Application of the Forum Selection Clause

Having concluded that transfer is not available under § 5103, we must decide which of Plaintiffs' claims are properly before this Court given the forum selection clause contained in the Greenfish Repurchase Agreements.  Plaintiffs' position is that this clause requires dismissal of only Greenfish's claim that IPI breached the Greenfish Repurchase Agreements.  Defendant IPI disagrees

---

[3]In light of this conclusion, we need not consider the argument raised by DSP, Zoldan and the Attorney Defendants that § 5103 does not authorize a district court to transfer matters to state court at all, but rather empowers litigants to do so by "filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of [the] Commonwealth."  42 Pa.C.S. § 5103; see also  Majek, 2006 WL 1704562, at * 1 (The power of transfer under § 5103 "lies with the parties themselves, not with the district court." (emphasis original)).

with this limited interpretation, and argues that the forum selection clause requires dismissal of not only every claim brought by Greenfish and Roundhouse against IPI, but also claims brought against all of the other Defendants. We conclude that neither of these interpretations provides a fair reading of the scope of the forum selection clauses at issue.

Preliminarily, we note what is not in dispute. Plaintiffs admit that at least some claims must be dismissed based upon the forum selection clause. By this admission we understand Plaintiffs to agree that the clause is valid, that it requires claims to be litigated in the Court of Common Pleas of Montgomery County, and that the contested issue before us is limited to the scope of the clause. Even if this were not the case, we would reach the same conclusion. Forum selection clauses are "presumptively valid," and are enforceable provided they were not procured by fraud or overreaching, and enforcement would not violate public policy or effectively deprive a party of its day in court. Foster v. Chesapeake Ins. Co. Ltd., 933 F.2d 1207, 1219 (3d. Cir. 1991). No such allegations have been made in this case. Further, the plain language of the clause, which requires that all actions be brought in a court "with venue in Montgomery County," precludes litigation in this Court of matters within its scope. See Thomas-Brady v. Liberty Mut. Fire. Ins. Co., 2011 WL 6150643 (E.D. Pa. Dec. 12, 2011) (interpreting a materially identical forum selection clause).

### A. The Scope of the Forum Selection Clause

"The question of the scope of a forum selection clause is one of contract interpretation." John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp., 119 F.3d 1070, 1073 (3d Cir. 1997). "Pennsylvania courts apply the 'plain meaning rule' of interpretation of contracts which assumes that the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the

8

agreement." Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994) (quotation omitted). A contractual clause is unambiguous where it is susceptible to only one reasonable interpretation. See id. (citing Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)).

In this case the forum selection clause applies to "any legal actions between Buyer and Seller regarding the purchase of the Accounts" under the Repurchase Agreements. (Comp. Ex. Q, § 10.8.) We conclude that the broad, unambiguous language of this provision encompasses all of Greenfish's claims related to Portfolios 1-4, which are the accounts covered by the Greenfish Repurchase Agreements.

Plaintiffs' claim that the clause covers only Greenfish's breach of contract claims is contradicted by its plain language. We disagree because the provision states that it applies to "any legal actions." (Id.) Such "broad, unconditional forum selection clauses . . . apply to all claims, whether they be based in tort or contract." Oak Systems, Inc. v. Francotyp-Postalia, Inc., 2002 WL 442104, at * 2 (E.D. Pa. Feb. 5, 2002); see also Crescent International, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988) (term "any litigation" in forum selection clause includes contract, RICO, fraud, unfair competition and tortious interference claims).

Moreover, the forum selection clause is not limited to claims which arise from the Greenfish Repurchase Agreements themselves. Rather, the clause applies to all claims "regarding the purchase of the accounts" covered by the Repurchase Agreements.[4] This language is broader than claims which "arise from" the Greenfish Repurchase Agreements. See Wyeth, 119 F.3d at 1074. Indeed,

---

[4] The term "regarding" means "related to" or "concerning," Oxford English Dictionary (2002), both having broad meaning.

the claim need only concern the purchase of the accounts subject to the Agreements in order to fall within the scope of the clause.

Greenfish's claims are based upon its allegation that Defendants induced them into purchasing investment accounts by making various fraudulent misrepresentations. These claims plainly "concern" the accounts Greenfish alleges it was fraudulently induced into purchasing. To the extent that Greenfish's claims are based upon the purchase of Portfolios 1-4, they fall squarely within the scope of the forum selection clause.

Our conclusion is further supported by the integration clause contained in the Greenfish Repurchase Agreements. Section 10.6 of each Agreement provides that it constitutes the "entire agreement between the parties and supersedes all prior agreements between the parties with respect to the subject matter hereof." (Comp. Ex. Q.) Pursuant to this provision, the terms of the Greenfish Repurchase Agreements supersede the prior agreements between Greenfish and IPI, including the agreement whereby Greenfish originally purchased the accounts from IPI. The integration clause therefore provides further context to the language of the forum selection clause, and supports our finding that the clause applies to all claims concerning Portfolios 1-4, which were ultimately subject to the Greenfish Repurchase Agreements.

      **B.**     **Which Parties Are Bound By the Forum Selection Clause**

Having determined the scope of the forum selection clause, there remains the question of who will be bound by its terms. Plaintiffs contend that the clause applies only to claims between the signatories of the Greenfish Repurchase Agreements—Greenfish and IPI. IPI disagrees and argues that the clause binds both Greenfish and Roundstone, and also applies to their claims against all Defendants, not just IPI.

"In the Third Circuit, a non-signatory party may enforce a forum selection clause in a contract if the party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound." D'Elia v. Grand Carribean Co., Ltd., 2010 WL 1372027, at * 3 (D.N.J. Mar. 30, 2010); see also First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Baltimore, Inc., 2012 WL 1150131, at * 3 (E.D. Pa. Apr. 5, 2012) ("It is widely accepted that non-signatory third parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship."). Sufficiently close relationships have been found in a variety of contexts. See Coastal Steel v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983) (third party beneficiaries); Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287 (3d Cir. 1996) (employment); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121-22 (3d Cir. 1993) (agency).

Here, the non-signatory Defendants are closely related to the dispute between Greenfish and IPI because their alleged wrongful conduct was undertaken in there roles as agents of IPI. Greenfish claims that each of the Defendants, including IPI's principals and attorneys, as well as DSP and Zoldan, made material misrepresentations which induced it into purchasing from IPI the investment accounts subject to the Greenfish Repurchase Agreements. (See Comp., ¶¶ 1-7, 120.) Additionally, Greenfish claims that DSP and Zoldan perpetuated that fraud through the management of those accounts on behalf of IPI. (Id.) The non-signatory Defendants' alleged conduct was at the direction of IPI, and related entirely to the purchase and management of the accounts covered by the Greenfish Repurchase Agreements. Under these circumstances, we find that the non-signatory Defendants have a sufficiently close relationship to the dispute between IPI and Greenfish such that it was foreseeable that they would be bound by the forum selection clause contained in the Greenfish

Repurchase Agreements.

However, the same cannot be said with regard to Roundstone.  There are no allegations that could establish a relationship between Roundstone and Greenfish, aside from the fact that they brought their claims in the same complaint.  Although Plaintiffs' claims are based upon substantially identical legal theories, Roundstone's claims are based upon an entirely distinct set of facts from Greenfish's, including different agreements and alleged misrepresentations.  Importantly, none of the agreements entered into by Roundstone contain a forum selection clause.  The mere fact that one investor, Greenfish, agreed to litigate its claims in a particular forum does not make it foreseeable that each of the other investors, whose contracts contained no forum selection clause, would be obligated to do so as well.[5]

## IV. Conclusion

For the foregoing reasons, we conclude that transfer under 42 Pa.C.S. § 5103 is not available where, as here, the Court has jurisdiction over the matter, and the only dispute is whether venue is proper under a forum selection clause.  However, we find that the forum selection clause in the Greenfish Repurchase Agreements requires that Greenfish litigate all claims against IPI and the other Defendants concerning Portfolios 1-4 in the Court of Common Pleas of Montgomery County.  Accordingly, those claims will be dismissed.  However, Roundstone is not bound by the forum

---

[5] We note that IPI also argues that the Court should dismiss Roundstone's claims under forum non conveniens, asserting that litigating similar claims in two different courts would be "burdensome" and "costly."  This is not a sufficient reason to disregard Roundstone's choice of forum.  Rather, dismissal for forum non conveniens is only appropriate "when trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience." Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 160 (3d Cir. 2010).  The possibility of duplicative discovery or motion practice is simply insufficient to demonstrate that litigation of Roundstone's claims in this Court would be oppressive or vexatious to Defendants.

selection clause in those Agreements, and its claims will remain with this Court.[6]

Our Order follows.

---

[6] As the Court suggested at oral argument on May 24, 2012, the interests of efficient litigation and judicial economy are best served by litigating all of Plaintiffs' claims in the same forum. (See N.T. 5/24/2012, p. 23.)  The forum selection clause in the Greenfish Repurchase Agreements, however, requires that some claims be litigated in the Court of Common Pleas of Montgomery County, and we are without authority to transfer the remainder to that court.  As such, should the parties wish to avoid inefficient and duplicative litigation, we encourage them to reach an agreement whereby the remaining claims are voluntarily dismissed pursuant to Rule of Civil Procedure 41(a), and re-filed in the Montgomery County Court of Common Pleas.